## Catching *vs* Davis.

APPEAL FROM THE LAUREL CIRCUIT.

*Sheriffs.   Sureties of public officers.*

TRESPASS.

Case 21.

CHIEF JUSTICE ROBERTSON delivered the opinion of the Court.

*September 22.*

THIS is an agreed case, presenting for our decision the question whether *Benjamin Catchings* is, *de jure*, Sheriff of Laurel county, he having been commissioned by the

The case stated.

Governor, in July last, to fill a vacancy in the office of Sheriff of said county, supposed to exist in consequence of a failure by *Jones*, previously commissioned and acting as the Sheriff, to give new security, though notified according to an act of 1799, (2 *Digest*, 1439,) by his sureties, that they would remain no longer bound. And this question depends on the further question whether Sheriffs are embraced by that statute, which enacts in effect, that if the surety of "any Clerk of a Court, Sur- "veyor of a county, or *any other public officer who holds* "*or may hold an office during good behavior*," shall notify his principal, in a prescribed mode, that he will not continue longer bound, and require him to "give other security," his office "shall be vacated," and another person shall be appointed in his "stead," unless he shall give the required new security.

Clerks hold their offices during good behavior and the continuance of their lives and of their offices—a Sheriff may hold his office "for two years, *if he so long behave well*," 31st *section of the Constitution of Kentucky, Article* 3. The tenure of the office of Clerk is, therefore, more indefinite than that of Sheriff; and consequently, all those officers may not, *to the same extent*, be entitled to hold during good behavior. But none of them can hold by the tenure of good behavior only, and all of them, *as long as they remain in office*, hold alike by no other tenure, and are equally subject to amotion for misbehavior. It would be absurd to construe the statute as intending by the phrase, "during good behavior," officers who hold by no other tenure, because some of the enumerated officers do not hold by that tenure alone; Clerks, for example, however well they may behave, cannot hold their offices longer than the continuing existence of their respective Courts. The office of Clerk is limited by the continuance of his Court, and during the existence of the Court he holds by the tenure of good behavior. The office of Sheriff is limited also—not, however, precisely like that of a Clerk, by a contingent event, but by time. The only difference between the limitations is that one is definite, the other indefinite. But so far as good behavior is the tenure of office, Sheriffs and Clerks hold by

the same tenure. A Clerk holds by the tenure of good
behavior as long as his Court exists and no longer—a
Sheriff holds by the same tenure for two years, and no
longer. Each holds, therefore, during good behavior,
subject to a limitation as to time, and the mere fact that
the limitation in one case is certain as to duration, and in
the other contingent, cannot have the effect of changing
the tenure of the respective offices, so far as it depends
on good behavior.

The Legislature intended, we have no doubt, to include
officers who hold their offices *on the condition of good*
behavior, whatever might be the limitation as to the du-
ration of the office. If they intended only such as may
hold so long as they shall behave well, without regard to
any other fact or consideration, their enactment would
not apply even to all Clerks, although Clerks are express-
ly mentioned in the act. And besides, Sheriffs are em-
braced by the object of the statute as certainly as any
other class of officers.

Moreover, the 18th section of the 4th article of our
State constitution, provides that "the General Assembly
"*shall* direct by law, how persons who are or may here-
"after become securities for *public officers*, may be re-
"lieved or discharged on account of such securityship."

This injunction is as comprehensive as it is impera-
tive. It embraces the sureties of *all public officers*, and,
of course, the sureties of Sheriffs. The constitution was
adopted on the 17th of August, 1799, and the statute we
are considering was enacted on the 19th of December of
the same year. There can be no doubt, therefore, that
the object of this enactment was, to execute the mandate
and fulfil the purpose of the constitutional provision in
favor of the sureties of all public officers who might be
removed for misbehavior, and who give bond and secu-
rity for their official conduct. And consequently the stat-
ute, in our judgment, provides for the contingent vacation
of all such offices, the tenure of which is good behavior
as long as they shall be holden, whether there is any
other limitation or not as to duration.

In addition to these considerations, we may suggest the
fact, that if the enactment of 1799 does not apply to

The statute of
1799, (2 St. Law,
1439,) embraces
the sureties of
Sheriffs.

And they may be
removed from of-
fice at the in-
stance of their
sureties, if they
fail or refuse to
give other sure-
ty.

Sheriffs, the only sureties, public or private, for whose security or relief the Legislature has, up to this time, made no provision, are the sureties of Sheriffs.

We are therefore clearly of opinion, that the act of 1799 embraces the sureties of Sheriffs.

. Nor do we doubt, that although one clause of the constitution provides that Sheriffs shall be entitled to hold their offices for two years, if they so long behave well, nevertheless the act of 1799, authorizing the removal of recusant Sheriffs, in cases therein provided for, is constitutional—because the same constitution which fixes the tenure of office, authorizes the vacation of the office for the exoneration of sureties, if it be necessary for that purpose. And in the case of Sheriffs who refuse to give new security when required, there seems to be no other effectual mode of securing the exoneration of the sureties than by removing the Sheriff from office and substituting another Sheriff.

We are therefore of the opinion, on the agreed facts, that Catching is the legal Sheriff of Laurel county.

Wherefore, as the Circuit Judge decided that the statute of 1799 does not apply to Sheriffs, and consequently decided also, that Catching is not the legal Sheriff of Laurel, his judgment in this case is reversed, and the cause remanded, with instructions to render a judgment in favor of Catching, on the agreed facts.

*F. Ballinger* and *Harlan & Craddock* for appellant: *E. Smith* for appellee.